RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 7/20/07
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Jeanette A. Haydel | Civil Action No. 03-1686 |
| versus | Judge Tucker L. Melançon |
| PFT Roberson, Inc., *et al* | Magistrate Judge C. Michael Hill |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant, Protective Insurance Co. [Rec. Doc. 103] and plaintiff's Opposition thereto [Rec. Doc. 105]. For the reasons set out, defendant's Motion [Rec. Doc. 103] will be DENIED.

### I. UNDISPUTED FACTS

This litigation arises out of injuries sustained by plaintiff Jeanette A. Haydel on August 1, 2002, as plaintiff was driving her Honda CRV eastbound of U.S. Hwy. 90 in St. Mary Parish, Louisiana, when one of defendant PFT Roberson, Inc.'s ("Roberson"), a multi-state trucking company, 18-wheelers, driven by a Roberson employee, Phillip Emery, pulled out from a truck stop and crashed into plaintiff's vehicle. (*Plaintiff's Opposition*, p. 1). On August 4, 2003, plaintiff filed suit against several named defendants, including Roberson, Emery, and Protective Insurance Company ("Protective"), for damages arising out of the August 1, 2002 accident in the Sixteenth Judicial District Court, Parish of St. Mary, State of Louisiana [Rec. Doc. 1]; Haydel named Protective as a party to this lawsuit pursuant to the Louisiana Direct Action

1

Statute. Defendants Roberson and Emery removed the action to federal court on September 10, 2003 [Rec. Doc. 3, 6].

During the course of these litigation proceedings, Roberson filed an Assignment for Benefit of Creditors ("ABC") in its home state of Illinois, which is essentially a form of bankruptcy. (*Defendants' Memorandum*, p. 1). Fort Dearborn Partners, Inc. (FDP) was appointed to handle the ABC of Roberson. (*Id.*). Pursuant to this proceeding, all Roberson claimants, including Haydel, were left whatever rights they could procure under a Letter of Credit issued by LaSalle Bank N.A. in the amount of two-million five hundred thousand ($2.5 million) dollars to cover Roberson's self-insured status with the Federal Motor Carrier Safety Administration, and under Roberson's insurance coverage, which was provided by Protective. (*Plaintiff's Opposition*, p.1).

Before making the ABC, Roberson purchased a personal injury liability insurance policy, policy number X-1209, from defendant Protective Insurance Co. ("Protective"), covering the time frame of August 1, 2002 to August 1, 2003 ("the policy"). (Exhibit B attached to *Defendant's Motion*). Protective has a limit of liability of nine million five hundred thousand ($9.5 million) dollars combined single limit per occurrence in excess of Roberson's $500,000.00 per occurrence self-retention. Plaintiff alleges that to satisfy its self-retention amount and its self-insured status under the Federal Motion Carrier Regulations, Roberson purchased an irrevocable stand-by letter of credit, number S5354067, with LaSalle Bank in Chicago, Illinois. However, plaintiff disputes that under

endorsement No. 6, the self-retention of Roberson under the policy is $200,000.00 for Louisiana, not $500,000.00 as stated by Protective. (*Plaintiff's Opposition,* pp. 1-2). Plaintiff also alleges that under endorsement No. 8 of the policy, the self-retention is effectively eliminated and the policy becomes a "drop down" policy, under which Protective's liability drops down to zero in the event that Roberson does not have valid and collectable underlying insurance, which it does not in this case. (*Id.*). It is undisputed that there was only one policy of insurance covering the time frame of Haydel's accident, that being the Protective policy, and that Roberson did not have any other valid and collectable underlying insurance. (*Id*).

While this lawsuit was pending, Haydel entered a settlement of all of her claims with defendants Roberson and Emery, evidenced by a letter dated March 17, 2005 signed by Jerry L. Hermann as counsel for Haydel, John E. Galloway as counsel for Roberson and Emery and Anthony Pacelli for FDP handling the ABC of Roberson. (*Defendant's Motion,* p. 2, Exhibit A). Haydel agreed to settle her claims for a total amount of $350,000 with the proviso that she would be paid $140,000.00 initially and would thereafter would be eligible to obtain the remaining $210,000 if the Letter of Credit issued by LaSalle Bank was not depleted by the other claims. Plaintiff alleges that she never received any of the additional $210,000.00 because the LaSalle Bank Letter of Credit was, in fact, depleted by the claims of multiple claimants. (*Plaintiff's Opposition,* p. 4, Exhibit "B", attached hereto, Letter of January 24, 2006, from John M. Schuessier, Senior Vice President of LaSalle Bank, N.A. to Kevin Cleary, advising that the letter of

credit has been drawn in full).

Protective moves for summary judgment alleging that there are no genuine issues of material fact and it is entitled to judgment as a matter of law dismissing the claims of the plaintiff against it as: (1) the settlement agreement states that "no money is to be paid by Protective Insurance Company," which Protective argues constitutes a valid contract evidencing Haydel's agreement that Protective would not have to pay any money to Haydel; and, alternatively (2) Haydel's settlement in the amount of $350,000.00 with Roberson and Emery prevents Haydel from collecting any money from Protective as Protective's "excess of self retention" policy does not come into play until and unless Roberson pays $500,000.00, which it did not do under the terms of the settlement. (*Defendant's Motion*).

Haydel acknowledges that the settlement agreement states that "No Money is to be paid by Protective Insurance Company." However, Haydel explains;

> In regards to the settlement with Roberson and its assignee, those words were imminently true: Protective did not contribute to the settlement and was not released in the settlement. Protective nonetheless remains a viable defendant herein pursuant to the Louisiana Direct Action Statute with policy revisions that drop down and provide coverage to Ms. Haydel from the first dollar of her damages.

(*Plaintiff's Opposition*, p, 4). Plaintiff argues that the fact that Protective's lawyer handwrote on the settlement agreement with Roberson and its assignee that "no money is to be paid by Protective Insurance Company," does not prohibit her from pursuing a Direct Action claim under the Louisiana Direct Action Statue, La R.S. 22:655. Additionally,

4

plaintiff alleges that Protective's contention that the policy is only in excess of PFT Roberson's self-retention and that it can not be forced to pay any amount until Roberson itself paid the ultimate net loss, "runs head-on into the Louisiana Direct Action Statute and cases thereunder, which guarantee a tort victim like Ms. Haydel a right to proceed directly against the insurer without regards to whether the policy is an indemnity or liability policy." (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a

genuine issue for trial.[1] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c);

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

This Court is called upon to decide whether Protective is liable to plaintiff under the policy of insurance it issued to Roberson, with whom plaintiff has already settled her claims. Defendant's argument, to which it alleges there is no triable issue of fact, is two-fold: (1) subsequent to plaintiff's settlement with Roberson, which expressly released Protective from liability stating that "no money is to be paid by Protective Insurance Company," Haydel sued Protective despite her agreement not to; and (2) as an excess policy, Protective's liability under the policy is not raised until and unless Roberson pays $500,000.00, which it did not do under the terms of the settlement. (*Defendant's Memorandum*, p. 2).

In response, plaintiff alleges that the following facts are disputed:

1. Whether there has been a settlement or release by Jeanette Haydel on behalf of Protective Insurance Company in this case; *specifically* whether the words "No money is to be paid by Protective Insurance Company" in the settlement reached by Haydel, Roberson, and its assignee for ABC, constitutes a release of Protective for Haydel's damages in this case.

2. Whether endorsement No. 8 eliminates self-retention and requires the policy to become a "drop down" policy, making Protective liable to Haydel for dollar for dollar coverage of her damages.

3. Alternatively, if the Protective policy is not a "drop down" policy, whether the Protective contract is a valid excess contract, so that Protective is not

7

required to indemnify Roberson until Roberson has actually paid and then only when Roberson has paid more than the self-retention amount.

4. If the Protective policy is not a "drop down" policy, whether the self-retention of Roberson under the policy is $200,000.00, not $500,000.00, as allegedly stated by endorsement No. 6 of the policy for certain states, including Louisiana.

(*Plaintiff's Statement of Facts*).

As to defendant's first argument, Protective alleges that as per the terms of the settlement agreement, Haydel agreed that no money was to be paid by Protective and thus it is released from liability. (*Defendant's Motion*, p.2 ). Plaintiff disputes that the words "No money is to be paid by Protective Insurance Company" in the settlement letter, which was handwritten in by Protective's counsel above his signature, was not intended as and does not constitute a release of Protective. Haydel alleges that the statement merely reflects that Protective did not contribute to the settlement and it cannot by any means be construed as a valid and effective settlement or release by Haydel on behalf of Protective. (*Plaintiff's Statement of Facts*).

There is no dispute concerning the facts; what is at issue is the intent of the parties in executing the settlement and release agreement. Other than defendant's conclusory statement that plaintiff's agreement that no money was to be paid by Protective is "is of course a sound agreement since the contract between Protective and Roberson will not require Protective to pay anything to Roberson anyway under the terms of the Haydel/Roberson and Emery settlement," there is no evidence substantiating the intent of the parties to the settlement to settle with and/or release Protective from liability, or

otherwise rebutting plaintiff's explanation that the statement merely indicated that Protective was not paying anything in the settlement. (*Defendant's Memorandum*, p. 3). As there is no evidence indicating that the intent of the parties was anything other than what is portrayed by the clear language in the agreement, under Louisiana jurisprudence, interpretation of the release agreement "does not require an inquiry outside the four corners of the agreement to ascertain intent." *Sumrall v. Bickham*, 887 So.2d 73, 77 (La.App. 1st Cir. 2004) (*citing Gaubert v. Toyota Motor Sales U.S.A., Inc.*, 770 So.2d 879, 882 (La.App. 1st Cir. 2000)). Therefore the Court is called upon to examine and interpret the plain language of the agreement, particularly the legal effect of the written statement that no money is to be paid by Protective. The issue presents a question of law, which is appropriate for decision by summary judgment. *Smith v. Williams*, 879 So.2d 233, 235-36 (La.App. 1st Cir. 2004); *Gaubert*, 770 So.2d at 882.

The contradicting explanations provided by plaintiff and defendant as to the meaning of the phrases shows that ambiguity exists, as the language is reasonably capable of being understood in more than one way. Absent evidence of a clear intent to release the non-settling insurer from liability, the plaintiff's direct action claim against the defendant remains viable. *See Sumrall v. Bickham*, 887 So.2d 73, 77-78 (La.App. 1st Cir. 2004). Moreover, defendant does not escape independent liability simply because the insured was released pursuant to a settlement agreement with the plaintiff. The release of the insured does not constitute a release of the insurance company when the insurance company is brought into the case under the Louisiana Direct Action statute. *Id.*

9

Therefore, based on the record before the Court, after considering the law and the settlement agreement, the Court finds that the language of the alleged release is not clear and unambiguous and there is no evidence that the plaintiff intended to release Protective. Defendant has not carried his burden of proof and thus is not entitled to summary judgment on this basis.

As to the second issue, defendant argues that as an excess contract, Protective is only required to indemnify Roberson once Roberson has actually paid, and then only when Roberson has paid more than $500,000; thus, under the terms of the Haydel/Roberson and Emery settlement, Protective's policy was not brought into play. Plaintiff raises several arguments in support of her contention that "[T]he law of Louisiana [Louisiana Direct Action Statue, La R.S. 22:655] precludes Protective from...condition[ing] its liability under its policy on the ability of its insured to pay the ultimate net loss before the policy provisions come into effect:" (1) endorsement No. 8 eliminates self-retention and requires the policy to become a drop down policy so "Protective ...remains a viable defendant herein pursuant to the Louisiana Direct Action Statute with policy revisions that drop down and provide coverage to Ms. Haydel from the first dollar of her damages;" and (2), alternatively, if the Protective policy is not a drop down policy, the self-retention of Roberson under the policy is $200,000.00 for certain states, including Louisiana, not $500,000.00, as stated under endorsement No. 6 of the policy. (*Plaintiff's Opposition*).

As for the effect of endorsement Nos. 6 and 8 on the policy, the Court must consider the policy as a whole to determine, as a matter of law, based on the language of the endorsements, whether defendant is entitled to summary judgment. "An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles." *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. LSA-C.C. art.2045; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; *Huggins v. Gerry Lane Enterprises, Inc.*, 950 So.2d 750, 753-754 (La.App. 1st Cir. 2006). The court should not strain to find ambiguity where none exists. *Strickland v. State Farm Ins. Cos.*, 607 So.2d 769, 772 (La.App. 1st Cir.1992). However, if there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. LSA-C.C. art. 2050; *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 763. Ambiguity can also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. *Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989). If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. *See* LSA-C.C. art. 2056; *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764. The

determination of whether a contract is clear or ambiguous is a question of law, appropriate for decision by summary judgment. *McMath Const. Co., Inc. v. Dupuy*, 897 So.2d 677, 681 (La.App. 1st Cir. 2004).

Plaintiff argues that Protective's policy is a drop down policy under its clear and unambiguous terms and conditions, specifically endorsement No. 8 which allegedly eliminates self-retention in the event that Roberson does not have valid and collectable underlying insurance, which it clearly and undisputedly does not in this case. Under Louisiana law, drop-down coverage exists when an insurance carrier of a higher level of coverage is obligated to provide coverage that the carrier of the underlying level of insurance coverage has agreed to provide. *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 760. There are several Louisiana Supreme Court cases considering the distinction between policy language that creates drop-down coverage and language that does not. *Kelly v. Weil*, 563 So.2d 221 (La.1990); *Robichaux v. Randolph*, 563 So. 2d. 226 (La. 1990); *see also Insurance Co. of North America v. West of England Shipowners Mut. Ins. Ass'n*, 890 F.Supp. 1292, 1294 (E.D. La. 1995).

In *Kelly v. Weil*, 563 So.2d 221 (La. 1990), the Louisiana Supreme Court identified three basic types of excess policies and summarized the law on the issue of when the policy language drops down to take the place of coverage that would have been provided by an insolvent primary insurer.[2] The first category consists of "policies that distinctly

---

[2] In *Huggins v. Gerry Lane Enterprises, Inc.* 950 So.2d 750, 755 (La.App. 1st Cir. 2006), the court analyzed the *Kelly* case, as well as *Robichaux v. Randolph*, 563 So. 2d 226 (La. 1990) noting that the *Robichaux* case reached the same conclusion concerning another umbrella policy falling within the third category of cases

facilitate dropping down" if the underlying insurer is insolvent. Such policies state that the limit of the excess coverage is dependent on the "collectibility" or "recoverability" of the primary limits. Because the insolvency of the underlying carrier prevents the primary limits from being collectible or recoverable, coverage does drop down and is provided by the umbrella excess policy. *Id.* at 222. A second category consists of policies in which the language is properly understood not to facilitate a drop down of the excess insurance. In these policies, excess coverage is not dependent on recoverability or collectibility of the underlying scheduled policy amounts, but on whether the risk is "covered" under an underlying policy. The court pointed out that the term "covered" does not convey the same meaning as "collectible," but rather "refers to policies owned by the insured that include the risk in question regardless of those policies' collectibility." *Id.* at 225. Therefore, policies in this category clearly do not provide for a drop down if there is another policy providing coverage for the occurrence. *Id.* at 222. The third category consists of policies in which the insured's "retained limit" is defined as the greater of the "applicable limits of the scheduled underlying policies, and the applicable limits of any other insurance collectible by the insured." *Id.* The umbrella policy at issue in the *Kelly*

---

cases described in *Kelly. Robichaux*, 563 So.2d at 228. In *Robichaux*, the Supreme Court took particular notice of an additional provision providing specifically for the event of insolvency of the underlying insurer. That provision stated that in the event there was no recovery available to the insured as a result of the bankruptcy or insolvency of the underlying insurer, the coverage under the umbrella policy would apply only in excess of the applicable limit of liability specified in the underlying policy or policies. The court commented that this provision made the result in *Robichaux* "even more compelling than in *Kelly*," because: "It is evident that the parties to this insurance policy intended and, indeed specifically provided, that [the umbrella coverage] would not drop down in the event of the underlying insurer's insolvency." *Id.* at 227-28.

case used such language. The court reviewed other cases interpreting such provisions, compared the alleged drop down provision to other sections of the umbrella policy, and concluded that the words "collectible by the insured" in the second clause applied only to "other insurance" and not to "scheduled underlying policies." *Id.* at 223. Under the policy at issue in *Kelly*, the court found that the coverage provided by the umbrella policy would not drop down upon the event of the insolvency of the underlying scheduled insurer, and the only damages that could be imposed on the umbrella insurer were those in excess of the stated policy limits of the scheduled underlying policy. *Id.* at 226.

Then, in *Louisiana Ins. Guar. Ass'n, v. Interstate Fire & Cas. Co.*, 630 So.2d 759 (La.1994), the court examined an excess policy that did not fit into any of the *Kelly* categories; the court analyzed the policy using the basic precepts of contractual interpretation as set out in the Louisiana Civil Code and applicable jurisprudence. *Id.* at 762-63. The policy clearly stated in many of its provisions that it provided "excess" coverage only, and thus fell within the general rule that policies clearly stating they are excess only are not required to provide drop down coverage. *Id.* at 769. The court noted that an exception to that rule exists only when the policy language creates a "genuine ambiguity" as to the scope of coverage, such as in the first *Kelly* category where there is a clause indicating that coverage would be provided over underlying "collectible" or "recoverable" insurance. *Id.* at 770. The court stated that its findings were supported by jurisprudence holding that: "[A]bsent a specific requirement or undertaking in the excess policy to step down in the event of the primary insurer's insolvency, an excess insurer's

14

coverage should not be construed as stepping down." *Id.* at 772. The court ultimately held that although the dispositive language of the policy at issue was not "the plainest," the policy unambiguously precluded drop down coverage. *Id.*

Other than repeatedly alleging that the policy is an excess contract, providing that no liability attaches to it until the insured (Roberson) has paid the ultimate net loss and that Roberson has a $500,000 self retention, the defendant has not addressed plaintiff's contention that under endorsement No. 8 the policy becomes a drop-down policy providing dollar for dollar coverage to plaintiff. (*Defendant's Motion*, p.2). Significantly, endorsement No. 8 provides:

> The insured warrants it has in effect and will maintain throughout this contract period underlying insurance as indicated above. *[Listed is a $500,000.00 Protective Insurance policy dated May 1, 1998, bearing policy number IL00027 and renewals thereof]*. To the extent the insured does not have valid and collectable underlying insurance, the self-retention shall be reduced by the amount of the above listed underlying insurance which is not available or collectible.

The language of endorsement No. 8 expressly provides that in the event the underlying insurance in the stated amount is not maintained, Protective will be liable, not to the same extent it would have been liable had the underlying insurance been maintained, but to the extent and for the amount not covered by a "collectable underlying insurance" policy. Thus, even though the excess policy provides that it does not apply until the amount of the applicable underlying insurance has been paid, by the clear terms of endorsement 8, the policy drops down to fill the void created by the lack of a "valid and collectable"

underlying insurance. The Court finds that the endorsement provision and the policy at issue falls squarely within the first *Kelly* category. 563 So.2d at 222.

The language of endorsement 8 and the policy at issue, when construed as a whole, is sufficiently plan and unambiguous to yield an interpretation as a matter of law. For the foregoing reasons, the policy language is properly interpreted and understood to facilitate a drop down of the excess insurance because the provision premises coverage on whether claims are collectible under the primary underlying insurance. Therefore, defendant is not entitled to summary judgment as a matter of law.

Finally, plaintiff alleges that if the Court finds that the policy is only an excess contract without requiring drop down coverage, the self-retention of Roberson is $200,000.00 for Louisiana under endorsement No. 6 of the policy, not $500,000.00. Based on the foregoing, it is not necessary to reach this issue. However, the Court notes that pursuant to the language of endorsement 6, the self-insured retention for the state of Louisiana and certain other named states is clearly and unambiguously reduced to $200,000.00 from $500,000.00.

## IV. CONCLUSION

Based on the record before the Court and the reasons stated hereinabove, the Court finds that defendant, Protective Insurance Company is not entitled to judgment as a matter of law and Protective's Motion for Summary Judgment [Rec. Doc. 103] will be DENIED.